UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TECHTARGET, INC.<br><br>    Plaintiff,<br><br>v.<br><br>SPARK DESIGN, LLC,<br>WW CAPITAL PARTNERS, LLC<br><br>    Defendants. | Civil Action No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

## **INTRODUCTION**

This action arises from defendant Spark Design, LLC's ("Spark Design") and WW Capital Partners, LLC's ("Capital Partners") (collectively "Defendants") wrongful refusal to pay plaintiff TechTarget, Inc. ("TechTarget" or "Plaintiff") more than $221,606.55—exclusive of costs and fees—for advertising services TechTarget performed pursuant to a series of advertising contracts by and between the parties. By its Complaint, TechTarget seeks to recover damages caused by Defendant Spark Design's breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), unjust enrichment (Count III) and violation of M.G.L. c. 93A (Count IV - against both defendants), as well as claims against Capital Partners for promissory estoppel (Count V). TechTarget also seeks to pierce the corporate veil of Spark Design, a company directly controlled, operated, and funded by co-defendant Capital Partners (Count VI). TechTarget's Complaint also includes claims against Defendants for their violation of M.G.L. c. 266, § 37 (Count VII) and a claim seeking injunctive relief (Count VIII).

As further support for its claims, TechTarget states as follows:

## I.   PARTIES

1. TechTarget is a Delaware corporation with a principal place of business at 275 Grove Street, Newton, Massachusetts.

2. Defendant Spark Design is an Arizona limited liability company with a principal place of business at 425 Mill Avenue, Suite 300, Tempe, Arizona.

3. Defendant WW Capital Partners is an Ohio limited liability company with a principal place of business at 29425 Chagrin Boulevard, Cleveland, Ohio.

## II.   JURISDICTION AND VENUE

4. The District Court of the United States for the District of Massachusetts has jurisdiction in this matter under the provisions of 28 U.S.C. § 1332 in that it is a civil action between residents of different states, and the amount in controversy, exclusive of interest and costs, exceeds, $75,000.

5. This Court is the proper venue pursuant to 28 U.S.C. § 1391 because, among other things, TechTarget resides in the District of Massachusetts, and the parties' contracts contain a forum selection clause selecting Massachusetts as the proper forum to resolve any disputes arising therefrom.

## III.   RELEVANT FACTS

6. TechTarget publishes integrated media that enable information-technology (IT) marketers to reach targeted communities of IT professionals and executives in key phases of the technology decision-making and purchase process.

7. Spark Design is a branding and marketing firm.

8. Capital Partners is a private equity firm which invests in and manages small businesses and other similar entities. Upon information and belief Capital Partners owns all or a substantial portion of the membership interests in Spark Design.

9. In November 2008, TechTarget and Spark Design entered into the first of a series of advertising contracts, pursuant to which TechTarget agreed to perform certain advertising services on behalf of Spark Design (the "Advertising Contracts").

10. Spark Design was acting as the agent for Lumension Security, Inc. ("Lumension") and Palisade Corporation ("Palisade"). The services provided by TechTarget were expressly for the benefit Lumension and Palisade.

11. Lumension and Palisade, as Spark Design's clients, provided payment to Spark Design in exchange for Spark Design's securing of the advertising services from TechTarget.

12. Thereafter, Spark Design executed several additional Advertising Contracts with TechTarget. In accordance with the Advertising Contracts, TechTarget invoiced Spark Design for advertising services performed.

13. Almost from the outset of their business relationship, Spark Design failed to pay TechTarget's invoices in a timely manner. Notwithstanding such failures, TechTarget worked with Spark Design in a good faith effort to facilitate Spark Design's payment of its outstanding obligations to TechTarget.

14. Among other things, TechTarget assented to several payment plans, pursuant to which Spark Design repeatedly promised to satisfy its outstanding obligations through a series of monthly installment payments. Although many of these plans were communicated and agreed to via email, Spark Design executed a written payment plan in June 2009, when its outstanding balance was $98,606.43.

15.     Despite TechTarget's good faith and cooperative efforts, Spark Design consistently failed to honor its payment obligations to TechTarget.

16.     Upon information and belief, Lumension has paid Spark Design for the services provided by TechTarget.[1]  Spark Design has not forwarded these payments on to TechTarget.

17.     Spark Design failed to make full payment on 23 outstanding invoices from August 2009 through April 2010 (collectively, the "Invoices").

18.     As of June 30, 2010, the aggregate amount due under the Invoices—exclusive of costs and fees—was $221,606.55.

19.     In June 2009, WW Capital Partners, LLC ("Capital Partners"), a private equity firm contacted TechTarget concerning Spark Design.  Representatives of Capital Partners advised TechTarget that it had purchased all, or a majority of, Spark Design's membership interest.  They informed TechTarget that Capital Partners would be responsible for handling negotiations with TechTarget concerning payment of Spark Design's outstanding balance.

20.     Capital Partners indicated they were financially secure, and promised payment to TechTarget to bring Spark Design current on its outstanding balance.  Capital Partners also requested TechTarget postpone further collection action in light of these imminent payments.

21.     In the Spring of 2010, Capital Partners tendered a series of post dated checks to TechTarget for TechTarget to deposit at agreed upon dates in the coming months.  Among these checks were two checks each in the amount of $39,556.32.  TechTarget deposited the first check in April 2010.  The bank returned this check for insufficient funds.

---

[1] TechTarget is unaware if Palisade has made payments to Spark Design, but has no information to suggest they have not.

22. Based on subsequent communications with Capital Partners it was apparent they were aware the account from which the check had been drawn had insufficient funds at the time it was presented to TechTarget.

23. On May 6, 2010, pursuant to conversations with Ms. Nice-Barnett, TechTarget received a wire in the amount of $20,000 towards the Spark Design balance. The wire was sent from an account in the name of Black Mountain Enterprises, Inc. ("Black Mountain"). Upon information and belief, Black Mountain is owned by Oscar Villarreal, who also owns Capital Partners.

24. Black Mountain and Capital Partners are closely related entities.

25. In June of 2010, TechTarget presented a second check from Capital Partners in the amount of $39,556.32 to its bank. Capital Partners, however, placed a stop payment order on this check before TechTarget could deposit the check without notifying TechTarget.

26. Throughout the negotiation process Meredith Nice Barnett was TechTarget's primary contact at Capital Partners. Ms. Barnett is Capital Partners' Investor Relations Manager. According to the respective websites of Spark Design and Capital Partners Ms. Barnett is also the director of accounting services for Spark Design.

27. Neither Capital Partners or Spark Design ever complained to anyone at TechTarget concerning the quality of the services rendered to Spark Design or suggested that TechTarget had not fully performed pursuant to the terms of the Advertising Contracts.

28. No one at Capital Partners or Spark Design ever disputed the amount of Spark Design's outstanding balance with TechTarget. In fact, throughout the course of TechTarget's discussions with Capital Partners and Spark Design their representatives repeatedly acknowledged their increasing debt to TechTarget.

29. Pursuant to the Terms and Conditions which are incorporated by reference into each of the Advertising Contracts, Spark Design also agreed that TechTarget is entitled to a monthly late fee of 1.5%, plus all costs of collection and TechTarget's attorneys' fees.

## IV. CLAIMS

### COUNT I
**(Breach of Contract)**

30. TechTarget repeats and realleges the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. Pursuant to the Advertising Contracts, TechTarget agreed, among other things, to perform certain advertising services for Spark Design, and Spark Design agreed to pay TechTarget for those services.

32. TechTarget has fully performed its obligations under the Advertising Contracts.

33. Spark Design breached the Advertising Contracts by, *inter alia,* failing to pay TechTarget in accordance with the Advertising Contracts.

34. TechTarget has suffered significant financial damages of at least $221,606.55 as a result of Spark Design's breaches of the Advertising Contracts, for which Spark Design is liable.

### COUNT II
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

35. TechTarget repeats and realleges the allegations contained in paragraphs 1 through 34 as if fully set forth herein.

36. Spark Design's actions have deprived TechTarget of the fruits and benefits of the Advertising Contracts and constitute a breach of the implied covenant of good faith and fair dealing.

37. As a result, TechTarget has suffered financial damages for which Spark Design is liable.

38. TechTarget, therefore, is entitled to compensation for its efforts on behalf of Spark Design.

## COUNT III
**(Unjust Enrichment)**

39. TechTarget repeats and realleges the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40. TechTarget conferred a benefit upon Spark Design.

41. Spark Design accepted and appreciated the benefit conferred to it by TechTarget.

42. It is inequitable for Spark Design to retain the benefit without paying for the full and complete value thereof.

43. As a result, TechTarget has suffered substantial financial damage in an amount to be determined at trial.

## COUNT IV
**(Violation of MGL c. 93A v. Defendants)**

44. TechTarget repeats and realleges the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45. MGL c. 93A prohibits those engaged in trade and commerce in the Commonwealth from engaging in unfair or deceptive trade practices or acts.

46. Defendants' conduct and omissions as described herein, including entering into an agreement for products and services, falsely and repeatedly promising to pay for those product or services, knowingly passing bad checks, and fraudulently stopping payment without notifying TechTarget, constitute unfair and deceptive trade practices in violation of G.L. c. 93A, §§ 2 and 11.

47. The actions and transactions described more fully above occurred primarily and substantially within the Commonwealth.

48.     TechTarget is entitled to injunctive relief pursuant to G.L. c. 93A, § 11 to prevent the continuing damage to TechTarget caused by Defendants' misconduct.

49.     TechTarget is entitled to recover its reasonable attorney's fees and costs against Defendants pursuant to G.L. c. 93A, § 11.

50.     Defendants' misconduct was willful and deliberate, warranting an award of multiple damages pursuant to G.L. c. 93A, § 11.

51.     As a result of Defendants' violations of MGL c. 93A, TechTarget suffered significant financial damages and harm.

## COUNT V
### (Promissory Estoppel v. Capital Partners)

52.     TechTarget repeats and incorporates by reference the allegations contained in paragraphs 1 through 51 of this Complaint.

53.     There was a binding oral contract between TechTarget and Capital Partners by which Capital Partners promised to make payments on behalf of Spark Design and TechTarget agreed to continue to provide services to Spark Design and forbear on collection.

54.     If there is no binding, oral contract between TechTarget and Capital Partners, then, in the alternative, Capital Partners promised to satisfy Spark Design's outstanding balance with TechTarget and, in fact, tendered two checks towards this effort.

55.     In reliance on that promise, TechTarget continued to provide services pursuant to the Advertising Contracts, and also withheld further collection actions.

56.     As a result of TechTarget's reliance on Capital Partners' promise, TechTarget has suffered, and will continue to suffer, significant financial harm of $221,606.55, plus any further amounts to be determined at trial.

## COUNT VI
### (Alter Ego Claim v. Capital Partners)

57. TechTarget repeats and re-alleges the allegations contained in paragraphs 1 through 56 above as if set forth fully herein.

58. Spark Design is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of Capital Partners.

59. Spark Design and Capital Partners share employees.

60. Spark Design and Capital Partners have common owners.

61. Spark Design and Capital Partners commingled funds.

62. Capital Partners and its related entity Black Mountain, have made, and continue to make, payments on behalf of Spark Design.

63. Capital Partners enjoys pervasive control over the management of Spark Design.

64. Absent funding from Capital Partners, Spark Design would be insolvent.

65. Capital Partners was complicit in the fraud perpetrated against TechTarget when it knowingly issued a check with insufficient funds and stopped payment on the second check.

66. Since purchasing Spark Design, Capital Partners assumed the lead on handling Spark Design's account with TechTarget, including making payments on behalf of Spark Design (payments which ultimately bounced or were stopped by Capital Partners) and negotiating payment terms with TechTarget on behalf of Spark Design.

67. There is such a unity of interest and ownership between Spark Design and Capital Partners that their separate identities and personalities no longer exist.

68. The totality of the circumstances surrounding the relationship between Spark Design and Capital Partners indicates that Capital Partners is the alter ego of Spark Design.

69. Under these circumstances, adherence to the principle of Spark Design and Capital Partners' separate corporate existence would be unjust and unfair.

70. As a result of Capital Partners acting as Spark Design's alter ego, Capital Partners is liable to TechTarget for the outstanding balance owed by Spark Design to TechTarget.

71. To avoid harm to TechTarget should Spark Design have insufficient assets to satisfy a judgment, judgment should enter jointly and severally against Spark Design and Capital Partners.

## COUNT VII
**(Violation of M.G.L. c. 266 § 37 v. Defendants)**

72. TechTarget repeats and re-alleges the allegations contained in paragraphs 1 through 71 above as if set forth fully herein.

73. Spark Design and/or Capital Partners, did, upon information and belief, knowingly make, draw, utter or deliver checks which were refused for insufficient funds.

74. The passing of the bad check in violation of Massachusetts law caused TechTarget significant damages in amounts to be determined at trial.

## COUNT VIII
### (Preliminary Injunction v. Defendants)

75. TechTarget repeats and re-alleges the allegations contained in paragraphs 1 through 74 above as if set forth fully herein.

76. TechTarget has a high likelihood of success on the merits of its claims against the Defendants. The risk of irreparable harm to TechTarget outweighs the risk of harm to the Defendants.

77. The injunctive relief requested is necessary and appropriate to maintain the status quo pending a trial on the merits and to prevent irreparable injury to TechTarget.

78. Absent the requested injunctive relief, TechTarget is likely to suffer irreparable injury as there is a substantial likelihood that the Defendants will transfer, convey, encumber or dissipate their assets in a way that will hinder, delay or obstruct TechTarget from recovering the anticipated judgment.

79. TechTarget is unaware of any liability insurance of the Defendants that is or will be available to satisfy any judgment in this action.

**WHEREFORE**, TechTarget demands that the Court:

i. issue a temporary restraining order, and after hearing, a preliminary injunction pursuant to Count VIII of the Complaint, restraining and enjoining Spark Design, LLC and WW Capital Partners, LLC and their agents, nominees, representatives, servants, and attorneys from directly or indirectly assigning, alienating, selling, transferring, pledging, encumbering, concealing, or in any manner disposing of, diminishing or reducing the value of any of their assets up to the amount of $221,606.55 outside the ordinary course of business;

ii. issue a preliminary injunction pursuant to Count VIII of the Complaint, restraining and enjoining Spark Design, LLC, their agents, nominees, representatives, servants, and attorneys from directly or indirectly assigning, transferring, pledging, or conveying any of their assets up to the amount of $221,606.55 to Capital Partners, Black Mountain or any other related or affiliated entity or individual;

iii. enter judgment in favor of TechTarget on each Count of the Complaint;

iv. award TechTarget damages, plus its attorneys' fees, interest, late fees and costs;

v. enter judgment in its favor and against Defendants for multiple damages, plus costs, interest and attorney's fees for its violation of M.G.L. c. 93A for multiple damages, plus costs, interest, and attorneys' fees; and

vi. enter such additional relief as it deems just and equitable.

JURY DEMAND

TechTarget hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
**TECHTARGET, INC.**

By its attorneys,

/s/ Christopher M. Waterman_____
Joseph L. Demeo, BBO# 561254
Christopher M. Waterman, BBO# 641190
Demeo & Associates, P.C.
One Lewis Wharf
Boston, MA 02110
(617) 263-2600
Dated: July 30, 2010    cwaterman@jdemeo.com