```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

|   |   |
|---|---|
| TECHTARGET, INC. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CIVIL ACTION |
|  | ) NO. 10-11266-WGY |
| SPARK DESIGN, LLC; BLACK MOUNTAIN ENTERPRISES, LLC; WW CAPITAL PARTNERS, LLC | ) |
|  | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

YOUNG, D.J.                                             October 27, 2010

I.   **INTRODUCTION**

The plaintiff, TechTarget, Inc. ("TechTarget"), seeks damages for breach of contract and promissory estoppel against the defendants, Spark Design, LLC ("Spark Design"), Black Mountain Enterprises, LLC ("Black Mountain"), and WW Capital Partners, LLC ("WW Capital"). Black Mountain and WW Capital move to dismiss the claims against them.

A.   **PROCEDURAL BACKGROUND**

TechTarget filed its original complaint against Spark Design and WW Capital in July, 2010. In August, 2010, TechTarget amended its complaint, adding Black Mountain as a defendant. Subsequent to the filing of that amended complaint, Spark Design

filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Arizona.  That portion of TechTarget's action against Spark Design was thus automatically stayed.  See 11 U.S.C. § 362.  On August 27, 2010, WW Capital and Black Mountain filed the motion to dismiss at issue here.  The Court held oral argument on this motion on September 22, 2010.

    B.    **FACTS AS ALLEGED**

TechTarget entered into a contract with Spark Design in November, 2008.  Under the contract, TechTarget agreed to perform certain advertising services for Spark Design on behalf of several Spark Design clients.  TechTarget and Spark Design subsequently entered into several additional contracts for advertising services.  Shortly after the start of the business relationship, Spark Design failed to pay the invoices submitted to it by TechTarget.  As of June, 2010, Spark Design owed TechTarget an outstanding balance of $221,606.55.

In May, 2009, WW Capital, a wholly owned subsidiary of Black Mountain, had acquired a controlling interest in Spark Design.  Oscar Villarreal ("Villarreal") controlled both WW Capital and Black Mountain, and thus also controlled Spark Design.  Following the acquisition of Spark Design, representatives of WW Capital contacted TechTarget and assured it that WW Capital was financially secure and would pay Spark Design's outstanding balance.  TechTarget and Spark Design executed a payment plan in

June, 2009. Pursuant to that plan, WW Capital tendered a number of checks to TechTarget in the spring of 2010. One such check was returned for insufficient funds, and one had a stop payment order placed on it. Black Mountain made an additional payment to TechTarget on behalf of Spark Design in the form of a $20,000 wire transfer.

In the period following WW Capital's acquisition of Spark Design, Meredith Nice-Barnett ("Barnett") acted as an employee of both WW Capital and Spark Design. Barnett was TechTarget's primary contact for both WW Capital and Spark Design regarding payment arrangements. During this time, WW Capital, Black Mountain, and Villarreal sometimes would advance money to Spark Design so that Spark Design could pay its employees and other obligations.

**II. ANALYSIS**

WW Capital and Black Mountain move to dismiss TechTarget's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. They contend that TechTarget has not alleged sufficient facts to justify piercing Spark Design's corporate veil to reach WW Capital and Black Mountain. They further argue that TechTarget's complaint fails to state a valid claim for promissory estoppel.

A.  **Legal Standard**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Pro. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action.  Id. at 555-56.

B.  **Alter Ego**

In Massachusetts,[1] corporations "ordinarily are regarded as separate and distinct entities."  Scott v. NG U.S. 1, Inc., 450 Mass. 760, 766 (2008).  On rare occasions, however, a court may "pierce the corporate veil" between parent and subsidiary corporations.  Id.  Such piercing can occur in two situations.  First, "[a] veil may be pierced when the parent

---

[1] This Court notes the existence of a potential choice of law issue in this case because the defendants are business entities organized under the laws of Arizona and Ohio.  Arizona, Ohio, and Massachusetts law regarding piercing the corporate veil, however, involve the same analysis: all three states require a high degree of control of the subsidiary by the parent company and an element of fraud.  See Loiselle v. Cosas Mgmt. Group, LLC, 228 P.3d 943, 950 (Ariz Ct. App. 2010); Minno v. Pro-Fab, Inc., 905 N.E.2d 613, 617 (Ohio 2009); Scott v. NG U.S. 1, Inc., 450 Mass. 760, 766-68 (2008).  All parties have addressed the veil-piercing issue according to Massachusetts law. This Court will do likewise.

exercises 'some form of pervasive control' of the activities of the subsidiary '<u>and</u> there is some fraudulent or injurious consequence of the intercorporate relationship.'" <u>Id.</u> (quoting <u>My Bread Baking Co.</u> v. <u>Cumberland Farms, Inc.</u>, 353 Mass. 614, 619 (1968) (Cutter, J.)).  Second, a court may disregard corporate formalities "when there is a confused intermingling of activity of two or more corporations engaged in common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."  <u>My Bread Baking</u>, 353 Mass. at 619.

In applying this veil-piercing analysis, Massachusetts courts have endorsed a twelve factor approach:

> The relevant factors are (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

<u>Attorney General</u> v. <u>M.C.K., Inc.</u>, 432 Mass. 546, 555 n.19 (2000). Control in and of itself is not sufficient to disregard the corporate entity.  <u>See</u> <u>Scott</u>, 450 Mass. at 767-68.  In order to pierce the corporate veil, a court must conclude after evaluating these factors that the parent corporation directed and controlled the subsidiary and used it for an improper purpose.  <u>Id.</u>; <u>see</u>

also <u>Evans</u> v. <u>Multicon Constr. Corp.</u>, 30 Mass. App. Ct. 728, 736 (1991) ("There is present in the cases which have looked through the corporate form an element of dubious manipulation and contrivance....").

In this case, TechTarget's allegations touch on a number of the relevant factors. First, TechTarget alleges that Spark Design, WW Capital, and Black Mountain share common ownership in the person of Villarreal. Second, TechTarget's complaint and the transcript of Spark Design member Vince Adam's testimony in the bankruptcy proceedings establish facts from which a finder of fact could conclude that WW Capital and Black Mountain - through Oscar Villarreal - exercised pervasive control over Spark Design. Third, the complaint alleges intermingling of business assets of several types, including Barnett, a shared employee, and money transferred from WW Capital and Black Mountain to Spark Design.

TechTarget's complaint does not, however, allege facts that would support conclusions in its favor on the remaining nine factors. No alleged facts bear on the issues of Spark Design's capitalization, the observance of corporate formalities, corporate records, the payment of dividends, Spark Design's insolvency at the time of the contract, the siphoning of corporate funds, the nonfunctioning of Spark Design's officers or directors, the use of the corporations for the dominant

shareholders' transactions, or the use of the corporation in promoting fraud.

Thus, three of the factors potentially support the piercing of Spark Design's corporate veil, and the lack of evidence or allegations on the other nine supports the opposite conclusion. This numerical imbalance of factors weighs against TechTarget but is not determinative; "[t]he factors are weighed, not counted." George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 158 (D. Mass. 1998) (Saris, J.). Ultimately, TechTarget's attempt to pierce the corporate veil of Spark Design fails because it does not allege any fraudulent or improper use of Spark Design's corporate form relevant to the contractual relationship at issue here.

TechTarget's complaint does not allege any fraud, deceit, or dubious manipulation of Spark Design's corporate form. Although it has alleged confused intermingling and pervasive control, there are no allegations that this control was used in order to deceive or manipulate TechTarget. The only fraud TechTarget alleges is the issuance of a check drawn on an account with insufficient funds. This fraud, however, was not related to any corporate manipulation. Moreover, TechTarget has not - and cannot - allege that it was deceived or misled about Spark Design's corporate posture at the time it entered into the contract. TechTarget and Spark Design negotiated and signed the

contract in November of 2008, six months before WW Capital and Black Mountain acquired an interest in Spark Design. The contract, therefore, was not the result of any dubious manipulation on the part of WW Capital, Black Mountain, or Villarreal. Thus, although TechTarget's allegations could support a conclusion that - at a time <u>after</u> the contractual relationship began - WW Capital and Black Mountain took pervasive control of Spark Design, none of the allegations satisfies the requirement that a corporate form serve an improper purpose before a court will ignore corporate formalities. See <u>Scott</u>, 450 Mass. at 767-68.

Because this Court cannot disregard corporate formalities in this case, Spark Design cannot be considered the alter ego of WW Capital and Black Mountain, and claims against those entities based Spark Design's obligations must fail.

    **C.    Promissory Estoppel**

TechTarget also asserts a claim directly against WW Capital and Black Mountain based on a theory of promissory estoppel. Under Massachusetts law, the elements of promissory estoppel are "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." <u>Bongaards</u> v. <u>Millen</u>, 440 Mass. 10, 15 (2003).

8

TechTarget alleges facts sufficient to satisfy the first two elements of the test for promissory estoppel.  First, TechTarget alleges that WW Capital stated that it was more financially sound than Spark Design and that it would pay Spark Design's outstanding debt to TechTarget.  TechTarget further alleges that this promise was accompanied by a request that TechTarget postpone other collection efforts, thus showing intent to induce reliance.  Second, TechTarget alleges that it continued to provide advertising services to Spark Design, agreed to provide additional services, and withheld other collection efforts in reliance on this promise.

TechTarget fails, however, to allege facts that satisfy the third element of promissory estoppel: detriment resulting from its reliance. In its complaint, TechTarget alleges that its detriment was delinquent payments owed by Spark Design that it neither received nor pursued through other collections actions. Such harm already existed at the time of the alleged promise, however, and TechTarget does not allege any additional harm as a result of its reliance on WW Capital's promise.  TechTarget currently has a pending (though stayed) claim against Spark Design, which, if successful, would remedy the harm allegedly suffered; WW Capital's alleged promise did not have any negative effect on this claim.  TechTarget has not alleged any facts from

which a factfinder could conclude that WW Capital's alleged promise had a detrimental effect on its current position.

As TechTarget has not alleged facts sufficient to support a finding that it suffered detriment as a result of its reliance on WW Capital's statements, the promissory estoppel claim fails.

### III. CONCLUSION

Accordingly, WW Capital and Black Mountain's Motion to Dismiss is ALLOWED.

SO ORDERED.

/s/ William G. Young
───────────────────────
WILLIAM G. YOUNG
DISTRICT JUDGE